IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIUS WEBB and ERNEST THOMAS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 99-cv-413 |
| | : | |
| MERCK & CO., INC. | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                                                         September     11, 2007

      Plaintiffs Julius C. Webb and Ernest E. Thomas ("Plaintiffs") bring this action against Defendant Merck & Co., Inc. ("Defendant") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"). Currently before the Court is Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint, or in the Alternative to Strike Certain Allegations in the Second Amended Complaint (the "Motion"), and Plaintiffs' Answer to Defendant's Motion and Cross-Motion for Leave to File an Amended Complaint (the "Cross-Motion"). For the reasons stated below, Defendant's Motion will be granted in part and denied in part, Plaintiffs' Cross-Motion will be granted in part and denied in part, and Plaintiffs shall have fifteen days in which to file a Revised Second Amended Complaint.[1]

**I.     BACKGROUND**

      Plaintiff Julius C. Webb ("Webb") has been an employee at Defendant's West Point

---

[1] Subsequent to the drafting of this Memorandum and Order, the Court received notice from Plaintiff Julius Webb that he has settled his claims with Defendant. Accordingly, the Court's opinion will apply only with respect to Plaintiff Ernest Thomas.

facility since 1982. Plaintiff Ernest Thomas ("Thomas") was an employee at Defendant's West Point facility from 1982 until his retirement in 2005. On July 6, 1998, Webb and Thomas each filed an EEOC complaint which alleged, among other claims, that Defendant had engaged in a "pattern and practice of racial discrimination and racial harassment against African-American employees with regard to the terms, conditions and privileges of employment" which "created, and continues to create, a hostile and abusive work environment." See Webb's July 6, 1998 Charge of Discrimination, attached as Exhibit C to Defendant's Motion; Thomas' July 6, 1998 Charge of Discrimination, attached as Exhibit H to Defendant's Motion. Plaintiffs also each asserted that Defendant discriminated against African American employees with respect to "promotion to supervisory and/or managerial positions, work assignments, discipline and compensation." Id. The EEOC issued each Plaintiff a Right-to-Sue Letter on February 12, 1999. See Webb's February 12, 1999 Notice of Right to Sue, attached as Exhibit D to Defendant's Motion; Thomas' February 12, 1999 Notice of Right to Sue, attached as Exhibit I to Defendant's Motion.

Each Plaintiff again filed an EEOC complaint on March 10, 2000. See Webb's March 10, 2000 Charge of Discrimination, attached as Exhibit E to Defendant's Motion; Thomas' March 10, 2000 Charge of Discrimination, attached as Exhibit J to Defendant's Motion. In their complaints, Plaintiffs assert that Defendant "has engaged and continues to engage in a pattern and practice of racial discrimination and racial harassment against African-American employees" which has created a "hostile and abusive work environment." Id. Specifically, Plaintiffs claim that Defendant discriminates with respect to "hiring, compensation, promotion, demotion, job assignments, training, transfer, layoff, discharge, and discipline decisions." Id. Both Plaintiffs

also allege that they have been retaliated against for filing the instant action. Id. The EEOC issued each Plaintiff a Right-to-Sue Letter on October 13, 2000. See Webb's October 13, 2000 Notice of Right to Sue, attached as Exhibit F to Defendant's Motion; Thomas' October 13, 2000 Notice of Right to Sue, attached as Exhibit K to Defendant's Motion.

On January 27, 1999, Plaintiffs, along with other present and former employees of Defendant, filed a class action alleging violations of Title VII and Section 1981. On September 12, 2000, the putative class members filed the First Amended Complaint.[2] Specifically, the First Amended Complaint asserts that Defendant subjected the members of the African American class to a pattern and practice of racial discrimination, thereby creating a hostile work environment. It also claims racial discrimination with respect to hiring, compensation, promotion, demotion, job assignments, training, transfer, layoff, and discipline. In addition, the First Amended Complaint contains individual allegations with respect to both Webb and Thomas. On April 1, 2002, the Court denied certification of class action status. The Third Circuit declined to review the Court's April 1, 2002 Order, and many of the individual plaintiffs' claims subsequently settled or were transferred to other courts.

On April 28, 2006, after the case had been transferred to Judge Yohn, the Court issued an order requiring the parties to complete discovery with respect to all remaining claims by October 15, 2006. On August 31, 2006, Defendant contacted counsel for the remaining individual plaintiffs (including Webb and Thomas), asking that they inform Defendant by September 8, 2006 whether they "intend[ed] to bring any claims, or to raise any allegations, with respect to any

---

[2] The class action originally was assigned to the Honorable Charles Weiner. The case was reassigned to the Honorable William Yohn on November 16, 2005 following Judge Weiner's death.

events that have arisen subsequent to the filing of the Amended Complaint on September 12, 2000." August 31, 2006 Letter to Martin D'Urso, attached as Exhibit L to Defendant's Motion. On September 15, 2006, counsel for the remaining plaintiffs responded that they intended to seek leave to file a Second Amended Complaint asserting additional claims "with respect to events that have arisen subsequent to the filing of the Amended Complaint," but they did not specify what those claims were. September 15, 2006 Letter to Michael J. Ossip, attached as Exhibit A to Plaintiff's Cross-Motion.

The parties engaged in settlement efforts throughout October 2006, and agreed to extend the discovery period through January 15, 2007. However, they were not able to settle all of the remaining individual plaintiffs' claims. On November 9, 2006, following a status conference to determine which of the remaining claims were related, Judge Yohn issued an order severing the case into a number of cases and ordering three of the remaining individual plaintiffs to file new complaints. The November 9, 2006 Order did not, however, direct Webb and Thomas to file a new complaint. On December 8, 2006, without leave to amend, Plaintiffs filed a Second Amended Complaint that included new allegations spanning from 1997 to 2006. See Second Amended Complaint ¶¶ 10e-j, 11b, 17. Plaintiffs' case was reassigned to this Court on December 11, 2006 and the parties have stipulated to further extensions of the discovery period.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 15(a) states in relevant part: " [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision to grant or deny leave to amend is committed to the sound discretion of the Court. Gay v. Petsock, 917 F.2d 768,

772 (3d Cir. 1990). Courts have consistently held that the policies embodied in Rule 15(a) allow for the liberal use of amendments. See, e.g., Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989) (emphasizing the "strong liberality ... in allowing amendments under Rule 15(a)"); Heyl & Patterson Int'l, Inc. v. F.D. Rich, Inc., 663 F.2d 419, 425 (3d Cir. 1981). Nevertheless, a district court has the discretion to deny a request for leave to amend a complaint "if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005) (citations omitted).

**III.    ANALYSIS**

Defendant presents three arguments: (1) the Court should dismiss the Second Amended Complaint in its entirety because Plaintiffs did not seek leave to amend pursuant to Federal Rule of Civil Procedure 15(a); (2) in the alternative, the Court should deny leave to add certain allegations because Plaintiffs' delay in seeking to amend is prejudicial; and (3) certain of the new allegations are futile, and therefore, cannot withstand a motion to dismiss.

Plaintiffs were not directed to file an amended complaint in the Court's November 9, 2006 Order, and they did not seek leave to do so prior to filing their Second Amended Complaint. However, Plaintiffs seek leave to file an amended complaint in their Cross-Motion. In the interest of judicial economy, the Court will not dismiss the Second Amended Complaint in its entirety. Instead, the Court will focus on Defendant's second and third arguments regarding certain specific allegations that have been made for the first time in the Second Amended

Complaint.³

    A.    **Undue Delay**

"The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay... In fact, delay alone is an insufficient ground to deny leave to amend." Cureton v. NCAA, 252 F.3d 267, 273 (3d Cir. 2001) (citations omitted). However, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." Id. (citing Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)). The Third Circuit has found that delay may become undue when a plaintiff has had prior opportunities to amend a complaint. See Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993) (finding that a three year lapse between filing of the complaint and the proposed amendment was an "unreasonable" delay where the plaintiff had "numerous opportunities" to amend); see also USX Corp. v. Barnhart, 395 F.3d 161, 169 (3d Cir. 1998) (finding that it was not an abuse of discretion to deny leave to amend a complaint where the plaintiffs waited over three years to amend the complaint and had notice of the events underlying the proposed amendments prior to filing both the original complaint and the first amended complaint).

    Plaintiffs argue that their delay in amending is not undue because the complex procedural

---

³    Defendant's only ground for dismissal of Paragraph 10j is that Plaintiffs did not seek leave of the Court before filing the Second Amended Complaint. Paragraph 10j asserts that Plaintiff Webb was subjected to compensation discrimination from January 2006 to September 2006. Since Webb filed his EEOC complaint regarding this allegation on October 18, 2006 (see Webb's October 18, 2006 Charge of Discrimination, attached as Exhibit G to Defendant's Motion), an EEOC right-to-sue letter had not yet been issued at the time the parties briefed the instant Motions. Accordingly, the Court will grant Plaintiffs leave to include Paragraph 10j when they file their Revised Second Amended Complaint, without prejudice to Defendant's right to move to dismiss this claim if Plaintiff Webb fails to fully exhaust his administrative remedies.

background of this case prevented them from filing the Second Amended Complaint earlier. See Cross-Motion at 13-14. They also argue that the delay is not prejudicial to Defendant because the parties have stipulated to an extension of the discovery period, thereby allowing Defendant to conduct a factual investigation of these new allegations. See Plaintiff's Sur-Reply Memorandum of Law ("Sur-Reply") at 2-3. Defendant, however, contends that it will be prejudiced if the Court allows the amendments because many of the new allegations will "require Merck to engage in a detailed and difficult investigation of ancient events that occurred between six and ten years ago ... Merck may not even be able to obtain sufficient information to conduct the complete and thorough investigation that is needed for it to properly defend the claims." Defendant's Motion at 10.

Among the allegations Plaintiffs seek leave to add are allegations involving: (1) a 1997 incident in which flyers about a Ku Klux Klan meeting to address "ethnic cleansing at Merck" were placed on cars in one of Defendant's parking lots; (2) the failure to promote Webb and Thomas to a lead supervisor position in the Summer of 1999; and (3) a March 2000 email that resembled a "Wanted" poster in which Webb and Thomas were featured. See Second Amended Complaint at ¶¶ 10e, 10f, 11b, and 17. These alleged claims were all known or should have been known to Plaintiffs before the First Amended Complaint was filed in September 2000, and had they been asserted at that time, Defendant would have been on notice of the need to conduct relevant discovery. Even as recently as September 2006, Plaintiffs continued to delay notice to Defendant of these pre-First Amended Complaint allegations by stating in a letter to defense counsel that they intended to bring new claims "with respect to events that have arisen *subsequent* to the filing of the Amended Complaint." September 15, 2006 Letter to Michael J.

Ossip (emphasis added).

Plaintiffs have failed to offer a reasonable explanation as to why these allegations, which are seven to ten years old, were not asserted earlier. Accordingly, the Court will deny leave to assert the allegations in Paragraphs 10e, 10f, 11b, and 17 of the Second Amended Complaint.[4] See USX, 395 F.3d at 169; Lorenz, 1 F.3d at 1414; Cureton, 252 F.3d at 274.

### B.  Futility

Defendant next argues that certain proposed allegations in the Second Amended Complaint are futile, either because Plaintiffs did not exhaust their Title VII administrative remedies or because they are time-barred by the applicable statutes of limitations for Title VII and Section 1981. A court may deny leave to amend on the basis of futility if a proposed amendment fails to state a claim upon which relief could be granted. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). "In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under [Federal Rule of Civil Procedure] 12(b)(6)." Id. (citations omitted). Accordingly, the Court must accept as true all well-pleaded allegations of the complaint and view them in the light most favorable to Plaintiffs.[5] Angelastro v.

---

[4] Plaintiffs also have sought leave to allege that "[o]ver a two-year period, Webb and Thomas were exposed to racist graffiti in the men's restroom in Building 34," but they have not specified when this two-year period occurred. Second Amended Complaint ¶ 10g. To the extent that this allegation involves events that occurred before the First Amended Complaint was filed in September 2000, the Court will deny Plaintiffs leave to add this allegation. If, however, this allegation involves events that occurred after the First Amended Complaint was filed, Plaintiffs should provide clarification when they file their Revised Second Amended Complaint.

[5] When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court looks to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). However, the Court may also consider matters of public record as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben.

Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).  In considering whether proposed amendments could survive a motion to dismiss, the Court should determine whether they contain "either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."  Montville Tp. v. Woodmont Builders, LLC, 2007 WL 2261567, at *2 (3d Cir. Aug. 8, 2007) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007)).[6]

### 1.     Failure to Exhaust

Prior to initiating a lawsuit under Title VII, a plaintiff must exhaust his administrative remedies by filing a complaint with the EEOC.  See 42 U.S.C. § 2000e-5(e); Webb v. City of Philadelphia, 2007 WL 210405, at *1 (E.D. Pa. Jan. 23, 2007).  If a plaintiff fails to do so, the unexhausted claims should be dismissed.  Webb, 2007 WL 210405, at *2.  In determining whether a claim has been exhausted, courts in the Third Circuit generally find that "if the allegations in the administrative complaint could be reasonably expected to grow out of those made in the EEOC charge ... the administrative remedies available to plaintiff will have been

---

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  The EEOC Complaints and Right-to-Sue Letters attached to Defendant's Motion are public records as well as documents that are central to Plaintiffs' assertion that they have exhausted their administrative remedies with respect to the proposed amendments.  Accordingly, the Court will consider these documents in determining whether the proposed amendments would be futile for failure to exhaust administrative remedies.  See Dixon v. Phil. Housing Auth., 43 F. Supp. 2d 543, 545 (E.D. Pa. 1999); Smith-Cook v. Nat'l R.R. Passenger Corp., 2005 WL 3021101, at *2 (E.D. Pa. Nov. 10, 2005).

[6]     In Twombly, the United States Supreme Court rejected the pleading standard articulated in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that a plaintiff could survive a motion to dismiss unless he could prove "no set of facts in support of his claim which would entitle him to relief."  Twombly, 127 S. Ct. at 1969 ("this famous observation has earned its retirement").

exhausted." Id. (citations and internal quotation marks omitted). Therefore, the Court may "assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims." Id. (citations omitted).

Defendant asserts that Plaintiffs failed to exhaust their administrative remedies with respect to their allegations that they were exposed to racist graffiti in the men's restroom and that they were denied promotions to two lead supervisor positions in July 2001.[7] Second Amended Compl. ¶¶ 10g and 10h. Plaintiffs both filed complaints with the EEOC in July 1998 and March 2000 which alleged, inter alia, that Defendant had created a "hostile and abusive work environment" for African Americans. They both received right-to-sue letters with respect to these complaints on February 12, 1999 and October 13, 2000, respectively. Thus, Plaintiffs' July 2001 failure to promote allegation arose after the EEOC completed its investigations. Because Plaintiffs have not indicated when they were exposed to racist graffiti, it is unclear from the face of the Second Amended Complaint whether that allegation also arose after the EEOC completed its investigations.

Plaintiffs concede that they cannot bring the July 2001 failure to promote allegation as an independently actionable claim since it was never the subject of an EEOC complaint.[8] Cross-

---

[7] Defendant makes the same exhaustion argument with respect to the allegations in Paragraphs 10e, 10f, 11b, and 17 of the Second Amended Complaint. However, since the Court will deny leave to add those allegations on other grounds (see supra), it need not reach the issue of whether they have been properly exhausted.

[8] In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court held that a discrete discriminatory act such as failure to promote is not actionable if it is not filed within the appropriate time period. See 536 U.S. at 113.

Motion at 18. However, they argue that this allegation, along with the allegation regarding racist graffiti, should be allowed because these incidents support "their single substantive claim that defendant created and facilitated a racially hostile work environment in violation of § 1981 and Title VII." Id. Defendant does not dispute that Plaintiffs exhausted their hostile work environment claims. However, it argues that the July 2001 failure to promote constitutes a discrete act, and as such, cannot be part of a hostile work environment claim under Title VII.[9] See Defendant's Reply Brief at 6.

In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court "established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim." O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006) (refusing to allow the plaintiff to aggregate unexhausted discrete acts under a hostile work environment theory where events that occurred within the limitations period were not sufficient to support liability). However, the Supreme Court also noted that even if prior discrete discriminatory acts are not actionable because they are time-barred, Title VII does not "bar an employee from using [those] prior acts as background evidence in support of a timely claim." Morgan, 536 U.S. at 113. Therefore, as one federal court has noted, "when a plaintiff brings a claim for hostile work environment and supports that claim with acts that could be considered discrete acts, the court must review the evidence to make sure that the plaintiff is not attempting

---

[9] "It is well established that exhaustion of Title VII administrative remedies is not a jurisdictional prerequisite to a federal district court suit charging discrimination in violation of [Section] 1981." Henry v. Schlesinger, 407 F. Supp. 1179, 1190 (E.D. Pa. 1976). Accordingly, Defendant's exhaustion argument only applies to the use of the proposed new allegations to support Plaintiffs' Title VII claim.

to allege a hostile work environment claim based only upon the separate discrete acts. A plaintiff cannot avoid the statutory filing requirements and the holding of <u>Morgan</u> by claiming that the discrete acts themselves give rise to the hostile work environment." <u>Royal v. Potter</u>, 416 F. Supp. 2d 442, 453 (S.D. W. Va. 2006); <u>see also</u> <u>Lebofsky v. City of Philadelphia</u>, 2007 WL 1217874, at *4 (E.D. Pa. April 24, 2007) (allowing an unexhausted failure to promote claim to be considered as part of the plaintiff's hostile work environment claim).

Since Plaintiffs concede that <u>Morgan</u> prevents them from bringing the July 2001 failure to promote allegation as an independently actionable claim under Title VII, the question remains whether Plaintiffs seek to bootstrap an untimely discrete incident to a timely, yet-unrelated hostile work environment claim. At the motion to dismiss stage, however, the Court cannot reach such a conclusion. <u>See, e.g.</u>, <u>Dress v. County of Suffolk</u>, 2007 WL 1875623, at * 9 (E.D.N.Y. June 27, 2007) ("[I]t may be that, after discovery in the instant case, plaintiff may be unable to prove that the timely incidents of harassment were sufficiently connected to the otherwise time-barred conduct to constitute a continuing violation. Nevertheless, at the motion to dismiss stage, the Court is unable to conclude that it will not be possible for plaintiff to prove such a continuing violation..."). If the July 2001 failure to promote allegation proves, after discovery, to be sufficiently connected to a viable, timely-filed hostile work environment claim, it may be relevant as "background evidence" even though the incident occurred after the EEOC investigations concluded and after the original Complaint was filed in this case. <u>See</u> <u>Morgan</u>, 536 U.S. at 113; <u>see also</u> <u>Martinez v. Potter</u>, 347 F.3d 1208, 1211 (10th Cir. 2003) ("Although circumstances in which acts occurring after the filing of the complaint provide evidence of employer motivation for prior actions may be unusual, our decision today heeds the teaching of

the Supreme Court and leaves open that very possibility."). The same logic holds true with respect to Plaintiffs' allegation regarding racist graffiti.[10] Accordingly, at this time, the Court will not strike either the July 2001 failure to promote allegation or the racist graffiti allegation from Plaintiffs' Title VII claim on the basis of failure to exhaust.[11]

### 2.    Statute of Limitations

Finally, Defendant argues that Plaintiffs' proposed amendments also would be futile because they are time-barred by the applicable statutes of limitations for Title VII and Section 1981 claims.[12] Plaintiffs counter that the proposed amendments relate back to the hostile work environment claims in the original Complaint and the First Amended Complaint, and therefore, are not time-barred.

Federal Rule of Civil Procedure 15(c) provides that an amended pleading relates back to the date of the original pleading when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c). The Third Circuit has noted that "Rule 15(c) is premised on the notion that a party is not entitled to the protection of the statute of limitations

---

[10]   However, as discussed supra, if the two-year period of racist graffiti occurred prior to when the First Amended Complaint was filed in September 2000, the Court denies Plaintiffs leave to make this allegation in their Revised Second Amended Complaint.

[11]   The July 2001 failure to promote incident may not be pursued as a separately actionable claim, and if, after discovery, either of these allegations prove to be sufficiently attenuated from any timely-filed hostile work environment claims, the Court will reconsider whether they should be stricken.

[12]   The Court need not consider whether the allegations in Paragraphs 10e, 10f, 11b, and 17 of the Second Amended Complaint relate back since the Court is denying leave to add those allegations on other grounds (see supra).

based upon the later assertion by amendment of a claim or defense that arises out of the same conduct, transaction, or occurrence set forth in the timely filed original pleading." Bensel v. Allied Pilots Ass'n., 387 F.3d 298, 310 (3d Cir. 2004) (citing 6A Wright, Miller, & Kane, Federal Practice and Procedure § 1496 (2d ed. 1990)). "Thus, amendments that restate the original claim with greater particularity or amplify the factual circumstances surrounding the pertinent conduct, transaction or occurrence in the preceding pleading fall within Rule 15(c)." Id. (citations omitted). "A party seeking relation back enjoys the general presumption in favor of allowing the amendments to pleadings." Spicer v. Villanova Univ., 2006 WL 3486465, at *1 (E.D. Pa. Dec. 1, 2006) (citing USX Corp. v. Barnhart, 395 F.3d 161, 167 (3d Cir. 2004)).

Plaintiffs contend that their proposed amendments regarding the July 2001 failure to promote and the racist graffiti "relate back" because, as previously discussed, they do not constitute new causes of action, but rather further evidence of the hostile work environment claims asserted in the first two iterations of their Complaint. The Court agrees. As noted previously, Defendant does not contend that Plaintiffs' hostile work environment claims are untimely. Plaintiffs' proposed amendments are based on the same general legal theory asserted in the original Complaint and the First Amended Complaint – that Defendant "created, perpetuated, and/or condoned a work environment that is hostile to Black employees." Since these allegations are not brought as independent claims, but merely provide further details regarding the timely hostile work environment claims, at this stage of the litigation, the Court cannot conclude that these allegations do not "relate back." See Bensel, 387 F.3d at 310 (finding that amendments related back where it was "clear that the [Amended Complaint] merely expounds upon and further details the factual scenario and breach claims that were roughly

sketched in its original Complaint"). However, as with the exhaustion issue, if the proposed amendments regarding the July 2001 failure to promote and the racist graffiti do not prove after discovery to be sufficiently connected to the timely-alleged hostile environment claims, the Court will reconsider the issue.

### IV.     CONCLUSION

Defendant's Motion will be granted in part and denied in part, and Plaintiffs' Cross-Motion will be granted in part and denied in part. Plaintiffs shall have fifteen days in which to file a Revised Second Amended Complaint consistent with this Opinion. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIUS WEBB and ERNEST THOMAS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 99-cv-413 |
| | : | |
| MERCK & CO., INC. | : | |

### ORDER

**AND NOW**, this 11th day of September, 2007, upon consideration of "Merck & Co., Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint, or in the Alternative to Strike Certain Allegations in the Second Amended Complaint" (docket no. 213), "Plaintiffs' Answer to Defendant Merck & Co., Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint or, in the Alternative, to Strike Certain Allegations in the Second Amended Complaint, and Plaintiffs' Cross-Motion for Leave to File a Second Amended Complaint" (docket no. 217), Defendant's Reply (docket no. 222), and Plaintiffs' Sur-reply (docket no. 223), it is **ORDERED** that Defendant's Motion will be **GRANTED** in part and **DENIED** in part, and Plaintiffs' Cross-Motion will be **GRANTED** in part and **DENIED** in part:

1) Plaintiffs are **DENIED** leave to assert the allegations in Paragraphs 10e, 10f, 11b, and 17 of the Second Amended Complaint;

2) Defendant's Motion is **DENIED** with respect to Paragraphs 10g, 10h, 10i, and 10j of the Second Amended Complaint; and

16

3) Plaintiffs shall file a Revised Second Amended Complaint consistent with this Court's attached Memorandum within fifteen (15) days from the date hereof.

BY THE COURT:

/s/ Bruce W. Kauffman

BRUCE W. KAUFFMAN, J.